UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-22154-CIV-WILLIAMS/D'ANGELO

RAZIEL OFER,

     Plaintiff,

vs.

PAM BONDI,
ATTORNEY GENERAL FOR THE
UNITED STATES OF AMERICA,

     Defendant.

_____/

REPORT AND RECOMMENDATION
GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant United States of America's Motion to

Dismiss filed on August 28, 2025 (DE 20).[1]  Plaintiff Raziel Ofer filed his response in opposition

on September 8, 2025 (DE 22), and Defendant replied on September 15, 2025 (DE 23).  Having

considered the Parties' arguments, the relevant legal authorities, and the pertinent portions of the

record, and being otherwise fully advised in the premises, for the reasons stated below, it is

respectfully recommended that Defendant's Motion to Dismiss be **GRANTED**.

I.    **FACTUAL BACKGROUND**

     This case arises from a pending lawsuit in this District, in which Plaintiff sues United States

Bankruptcy Judge Laurel Isicoff ("the Bankruptcy Judge"), who presided over the bankruptcy

proceedings involving two of Plaintiff's entities.  *See generally*, *Ofer v. Isicoff*, No. 23-CIV-24738

(S.D. Fla. Dec. 13, 2023).  Plaintiff brings this suit against the United States, alleging that as the

---

[1] This Motion was referred the undersigned Magistrate Judge for a Report and Recommendation
on September 4, 2025 (DE 21).

employer of the Bankruptcy Judge, Defendant is liable for tort and civil rights violations that Plaintiff purportedly suffered as a result of the acts of the Bankruptcy Judge.[2]  The relevant facts alleged in the Complaint follow.

Plaintiff owned and operated several limited liability companies within Florida that owned real estate (DE 1 ¶ 1).  As Plaintiff operated his real estate business, he became subject to litigation in Florida, in which third-parties brought claims to enforce alleged liens and other encumbrances against his properties (*id.* ¶ 3).  According to Plaintiff, in one case, these third-parties purportedly "bought in a Judicial sale a $50M property for merely $5.00 (Five USD), by far the biggest miscarriage of Justice in US history" (*id.*).  As a result of the litigation, in 2023, Plaintiff, with the advice of lawyers, filed petitions for reorganization related to two entities in the United States Bankruptcy Court for the Southern District of Florida (*id.* ¶¶ 4, 6).  Allegedly, before Plaintiff filed his petition for reorganization, "several private actors . . . conspired to cause the appointment of a very specific judge to become appointed to preside over the matters in the bankruptcy court prior to the petition being filed" (*id.* ¶ 7).  According to Plaintiff,

> It was recorded, in a public place, that [the Bankruptcy Judge] would be appointed to the bankruptcy matter months before the filing of the petition and gave rise to an employee of the United States being placed in a position to cause the loss of the property to Ofer. The recording was between the other party to the litigation, where they clearly implicated [the Bankruptcy Judge] with their crimes and admitted they

---

[2] Although the Complaint names Pam Bondi, Attorney General for the United States of America, as Defendant, Plaintiff stated in his opposition that "the Complaint clearly states allegations that [the Bankruptcy Judge] is an employee of the United States[,] and the United States is the Defendant" (DE 22 at 6).  *See Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1292 (11th Cir. 2018) (explaining that a *pro se* plaintiff might state a claim if given leave to amend to include specific allegations against the correct defendant).  In light of Plaintiff's *pro se* status, the Court interprets the allegations and claims as if they were brought against the United States and notes that Plaintiff's failure to name the proper party is not a basis to dismiss this action in its entirety. If given the opportunity to amend, Plaintiff could substitute the United States as the proper defendant.  *See Alberto v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 467, 469 (11th Cir. 2019) (stating "a *pro se* plaintiff's failure to include a proper defendant is a curable defect" through amendment to the complaint).

> committed a Grand Theft of Ofer's properties.  When the plaintiff reported to [the
> Bankruptcy Judge] that he's in possession of a recording implicating her with their
> crimes (grand theft), she threatened the plaintiff that he committed a felony by
> causing to record this discussion. [The Bankruptcy Judge] repeated these baseless
> threats despite knowing that the recording took place in a public place, which is
> legal in Florida.

(*id.* ¶ 8).

Plaintiff alleged that the Bankruptcy Judge caused Barry S. Mukamal, an "agent of the United States," to become the trustee of the bankruptcy estate, and that "the employee of the United States [referring to the Bankruptcy Judge] and the Agent of the United States [referring to Mr. Mukamal] conspired together to cause the loss of the property through conduct which was based upon the race, ethnicity, and religion of the Plaintiff as he is Jewish" (*id.* ¶¶ 9-10).  According to Plaintiff, the Bankruptcy Judge was presented "with the shocking antisemitic affidavits," stating that another party in the bankruptcy proceedings claimed that "persons of Jewish origin own[ed] too much real estate in this country and it therefore need[ed] to be confiscated" (*id.* ¶ 12).  The Bankruptcy Judge was also supposedly presented with a "voice recording of the private persons discussing her appointment to preside over the bankruptcy matters . . . and her implicated with their crimes (grand theft)" (*id.* ¶ 13).  According to Plaintiff, "[a]ny impartial Judge who would have been presented with such recording and the antisemitic affidavits, would have immediately arranged an evidentiary hearing, but not [the Bankruptcy Judge]" (*id.*).  Instead, the Bankruptcy Judge purportedly "threatened Ofer with criminal conduct . . . and ordered him not to mention the matters again . . . or he would be sanctioned" (*id.* ¶ 15).

Plaintiff alleges that "[w]hile performing her duties as an employee of the United States, [the Bankruptcy Judge] ignored this evidence that reflected how she was improperly appointed to the bankruptcy cases . . . and how Ofer was being targeted in the loss of his properties through antisemitic hateful crimes and criminal conduct" (*id.* ¶ 14).  Plaintiff further claims that the

Bankruptcy Judge "participat[ed] in the conduct herself and "engaged in illegal payments to her personally" (*id.* ¶¶ 18-19).  According to Plaintiff, "it is clear that [the Bankruptcy Judge] not only presided over the criminal conspiracy, but was in fact a partner in this scheme, as demonstrated by an email from the other party confirmed that [the Bankruptcy Judge] has received $2M bribe for her role in this criminal conspiracy" (*id.* ¶ 20).[3]  Lastly, Plaintiff alleges that "[e]ven after being notified of this conduct, the United States has failed to terminate its relationship with [the Bankruptcy Judge], commence impeachment[,] or otherwise end it employment relationship . . . ." (*id.* ¶ 22).  Based on these allegations, the instant Complaint asserts three causes of action.  In Count One, Plaintiff asserts a claim for negligence (*id.* ¶¶ 25-30).  In Count Two, Plaintiff asserts a civil rights violation claim (*id.* ¶¶ 31-38).  In Count Three, Plaintiff brings a claim for negligent retention (*id.* ¶¶ 39-46).  Defendant moved to dismiss all counts, contending the Court does not have subject matter jurisdiction and Plaintiff failed to state a claim upon which relief can be granted (DE 20 at 4-10).

## II.  <u>LEGAL STANDARD</u>

"'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed."  *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).  "[A]lthough we are to give liberal construction to the pleadings of *pro se* litigants, 'we nevertheless have required them to conform to procedural rules.'"  *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (quoting *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002)).  "[I]n liberally construing a litigant's arguments, we will not act as de facto counsel."  *Freeman v. Sec'y, Dep't of Corr.*, 679 F. App'x 982 (11th Cir. 2017) (citation omitted); *see also Toussaint v. U.S. Attorney's*

---

[3] Plaintiff states that his evidence, including the voice recording and the antisemitic affidavits, have "already been delivered to the FBI" (DE 1 ¶ 16).

*Off.*, No. 24-10116, 2025 WL 2237376, at *5 (11th Cir. Aug. 6, 2025) ("It was not the district court's responsibility to 'act as counsel' for a self-represented litigant, nor review [the plaintiff's] filings for possible claims." (citation omitted)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this plausibility standard, a plaintiff must "plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). "A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006).

## III.   **DISCUSSION**

Defendant offers four arguments for dismissal (DE 20). First, Defendant contends Plaintiff's complaint is frivolous and fantastical (*id.* at 2). Second, Defendant suggests that Plaintiff's claims under Title VI should be dismissed for lack of subject matter jurisdiction (*id.* at 4). Third, to the extent Plaintiff's claims sound in tort, Defendant explains that they should also be dismissed for lack of subject matter jurisdiction (*id.* at 6). Finally, Defendant maintains that Plaintiff fails to state an actionable claim for Counts One and Three (*id.* at 8). Plaintiff disagrees

and claims his Complaint is not frivolous and fantastical (DE 22 at 7). Plaintiff also argues that the Court has subject matter jurisdiction over his Title VI claim and his tort claims (*id.* at 8-12). Lastly, Plaintiff maintains his Complaint adequately states a claim for the torts and the civil rights violation (*id.* at 12-14).

### A.  The Claims in the Complaint are Frivolous

Defendant argues that Plaintiff's claims are "frivolous and fantastical," and the Court should exercise its inherent authority to dismiss the action (DE 20 at 3). Defendant explains that the claims have no basis in fact, are "clearly removed from reality[, and] are patently frivolous" (*id.* at 3-4). Defendant argues that Plaintiff puts forth allegations that the Bankruptcy Judge participated in a criminal scheme with the bankruptcy trustee and others to steal $120 million worth of property from Plaintiff, because he is Jewish, in exchange for a $2 million bribe, with no support for his allegations beyond two irrelevant affidavits and "a non-functioning link to a purported recording" (*id.* at 4; DE 23 at 2). Therefore, Defendant contends that dismissal is appropriate. Plaintiff counters that his Complaint is not frivolous and fantastical, as it "properly alleges the facts which the affidavit[s] themselves support" (DE 22 at 7). Plaintiff contends "the allegations cannot be frivolous and fantastical when the evidence shown, e.g. the affidavits and recording, support the allegations" (*id.*).

"A complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Indeed, "a court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional' . . . . As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v.*

*Hernandez*, 504 U.S. 25, 32-33 (1992) (citations omitted); *see also Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) ("[F]rivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" (citing *Neitzke*, 490 U.S. at 328)). "It is important to keep frivolity distinct from mere improbability." *Guthrie v. U.S. Gov't*, 618 F. App'x 612, 617 (11th Cir. 2015). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). "A determination of frivolity is best left to the district court, and the decision will not be disturbed so long as the district court stays within its range of choice and is not influenced by any mistake of law." *Jibrin v. Abubakar*, 814 F. App'x 480, 484 (11th Cir. 2020).

In light of the overlapping allegations between this case and Plaintiff's pending suit against the Bankruptcy Judge, any discussion of frivolousness should also include the Court's assessment of Plaintiff's allegations in that action. In *Ofer v. Isicoff*, the Court made the following observations:

> Plaintiff's Complaint has no arguable basis in fact. According to Plaintiff, Defendant is a corrupt judge who has been acting in concert with an undisclosed number of antisemitic co-conspirators for over 20 years. This largely unidentified antisemitic 'mafia' includes multiple federal judges and attorneys who believe that 'Jews . . . own too many properties and [Jewish] properties need to be confiscated.' Thus, when given the chance during Plaintiff's Chapter 11 bankruptcy (which was itself allegedly set up through the 'gross corruption' of an Eleventh Circuit Judge), '[Defendant] awarded her partners an $18M building for $5.00.' Defendant purportedly did so despite being fully aware that the Federal Bureau of Investigation ("FBI") had launched an investigation into her corruption. Plaintiff maintains that this is 'one of the worst [antisemitic] cases in [United States] history.' Still, he presents no support for these fantastical conspiracy accusations. The Court finds them to be delusional and malicious. . . .
>
> The grand judicial conspiracy Plaintiff complains of is simply unbelievable. . . .
>
> Amendment would be futile here due to the delusional nature of Plaintiff's allegations.

No. 23-CIV-24738, DE 25 at 4-6 (S.D. Fla. Apr. 30, 2024) (citations omitted).  Plaintiff correctly

points out that this Order was appealed to the United States Court of Appeals for the Eleventh

Circuit, which reversed the District Court's dismissal with prejudice and remanded the case for

further proceedings, as discussed *supra* (DE 22 at 5 n.2).  Nevertheless, in its unpublished decision

the Eleventh Circuit stated:

> [W]e (like the district court) express serious doubt that an amendment would save
> his claims*, see Padilla v. Smith*, 53 F.4th 1303, 1317 (11th Cir. 2022) ("[A] district
> court may dismiss a baseless 'claim' under Rule 12(b)(6) of the Federal Rules of
> Civil Procedure for failure to state a claim for relief . . . where such a claim is wholly
> insubstantial and frivolous."); *Neitzke v. Williams*, 490 U.S. 319, 328 (1989)
> (explaining that claims are frivolous if they "lack[] an arguable basis . . . in fact"
> such as claims "describing fantastic or delusional scenarios.") . . . .

*Ofer v. Isicoff*, No. 24-11542, 2025 WL 2466579, at *2 (11th Cir. Aug. 27, 2025) (per curiam).[4]

Plaintiff relies heavily on two affidavits and a link to a voice recording to rebut Defendant's

argument that his claims are frivolous and fantastical.  But, neither of the affidavits mention the

Bankruptcy Judge or help establish her participation is the purported conspiracy to deprive Plaintiff

of his assets, even if the Bankruptcy Judge did "ignore" this evidence as Plaintiff suggests (DE 1

at 13-14); *see also Ofer v. Isicoff*, No. 23-CIV-24738, DE 25 at 5 (S.D. Fla. Apr. 30, 2024) (stating

the "'antisemitic affidavits' . . . do not reference or in any way implicate [the Bankruptcy Judge]").

And as Defendant asserts, the link to the alleged voice recording implicating the Bankruptcy Judge

is now defunct (*see* DE 22 at 2 n.1).  Tellingly, any specific information regarding the substance

of this recording, which could have been stated in the Complaint, is absent.  Plaintiff alleges he "is

---

[4] The Court recognizes that the Eleventh Circuit issued an unpublished decision and is mindful
that "[u]npublished decisions are not binding authority and they are 'persuasive only to the extent
that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an
independent consideration of the legal issue.' . . . [W]e caution district courts from relying on our
unpublished decisions purely because they are *our* decisions . . . ."  *Koletas v. United States*, 159
F.4th 813, 820 (11th Cir. 2025) (emphasis in original) (citations omitted).

in possession of other email evidence which mentions that [the Bankruptcy Judge] engaged in illegal payments to her personally," which is also absent from the Complaint (*id.* ¶ 18).  Instead, Plaintiff directs the Court to a document filed in the pending litigation against the Bankruptcy Judge and asks the Court to take judicial notice of it (DE 22 at 8 n.4).[5]  Notwithstanding that it is unclear if the document is what Plaintiff purports it to be, the Court in that case described the attachments as "largely consist[ing] of additional unsupported claims which seek to recast Plaintiff's prior bankruptcy and court proceedings as a wide-ranging conspiracy to dispossess and steal Jewish property" and "fantastical."  *Ofer v. Isicoff*, No. 23-CIV-24738, DE 25 at 5 (S.D. Fla. Apr. 30, 2024).  Finally, Plaintiff attached to his opposition an alleged "affidavit" from Mark S. Roher, Esq., who Plaintiff states was his lawyer in the bankruptcy proceeding and a "'drinking' friend of [the Bankruptcy Judge's] husband," in which Mr. Roher purportedly admits to "committing malpractice and stealing money from Plaintiff's Credit Card" (DE 22 at 13-14). These allegations are missing from the Complaint and are not incorporated by reference. Even if this affidavit was attached to the Complaint, it too is as fantastical and unconnected to the claims in this case as Plaintiff's other documents.[6]

---

[5] "The taking of judicial notice of facts is, as a matter of evidence law, a highly limited process. The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (citation and quotation omitted). "Rule 201 does not require courts to warn parties before taking judicial notice of some fact, but, upon the party's request, it does require an opportunity to be heard after the court takes notice." *Id.*

[6] In the purported Roher affidavit, "the parties agree that this agreement shall remain strictly confidential and if any party wishes to submit this agreement to any court, it must be filed under seal for an *in-camera* review and shall not be filed in any such case." (DE 22 at 19 ¶ 24).  The affidavit supposedly has a provision calling for steep damages if confidentiality is breached (*id.* at 20 ¶ 30).  Plaintiff did not file the Roher affidavit under seal, as it was attached to his unsealed response to Defendant's Motion to Dismiss.

The undersigned shares the Court's view in the pending litigation against the Bankruptcy Judge that the claims are wholly insubstantial and frivolous.  Here, too, the Complaint lacks any "arguable basis in fact" and still "presents no support for these fantastical conspiracy accusations[,]" which continue "to be delusional and malicious."  *Ofer v. Isicoff*, No. 23-CIV-24738, DE 25 at 4-5 (S.D. Fla. Apr. 30, 2024).  The Complaint in this case fares no better, and the Court has yet another action by Plaintiff that attempts to perpetuate clearly baseless conspiracy theories resting upon damaging and unsupported allegations.  *See Bilal*, 251 F.3d at 1350 ("On the question of frivolousness, a litigant's history of bringing unmeritorious litigation can be considered.").[7] Furthermore, beyond the factual frivolousness of Plaintiff's allegations, as discussed below, Plaintiff's claims also lack legal merit.

---

[7] On December 17, 2025, the Third District Court of Appeal of Florida issued an Order to Show Cause in *Ofer v. Metropolitan Mortgage Co., LLC, et al.*, No. 3D24-1845 (Dec. 17, 2025).  There, the Court "impose[d] the following sanction: Raziel Ofer is barred from any filing before this Court absent the review and signature of a member in good standing of the Florida Bar."  *Id.* at 5.  The Third District Court of Appeal imposed sanctions after finding "[a]t its core, this starts and ends with the copy of the purported email Ofer attached to a court filing in this Court, accusing Drexel's counsel and a judge of bribery."  *Id.* at 4.  After an evidentiary hearing at the trial level, "[t]he commissioner concluded that Ofer failed to provide any evidence that Drexel's counsel created the email and that instead, it is likely that Ofer fabricated or caused the email to be fabricated."  *Id.* at 3.

In this District, Plaintiff currently has five open cases.  *See Ofer v. Isicoff*, No. 23-CIV-24738 (S.D. Fla. Dec. 13, 2023), *Ofer v. Miami Dade Property Appraiser's Off. et al.*, No. 26-CIV-20292 (S.D. Fla. Jan. 15, 2026), *Ofer v. Scales, III et al.*, No. 25-CIV-26133, (S.D. Fla. Dec. 29, 2025), *Ofer v. Ruiz*, No. 25-CIV-26134 (S.D. Fla. Dec. 29, 2025), *Ofer v. Attorney Gen. for the United States of America*, No. 25-CIV-22154 (S.D. Fla. May 8, 2025).  *Ofer v. Isicoff* and this case appear to be the only actions involving allegations regarding the purported conspiracy in which the Bankruptcy Judge is involved.  In *Ofer v. Scales, III et al.*, Plaintiff seeks to challenge the ruling of the Third District Court of Appeal imposing sanctions against him.  *See* No. 25-CIV-26133, DE 1 at 5 (S.D. Fla. Dec. 29, 2025).  *Ofer v. Miami Dade Property Appraiser's Off. et al.*, appears to involve allegations of title defect to real property.  *See* No. 26-CIV-20292, DE 1 ¶ 7 (S.D. Fla. Jan. 15, 2026).  *Ofer v. Ruiz*, involves a defendant, a Florida state court judge, where the plaintiff suffered damages "through the entry of unlawfully obtained judgments in violation of due process, Statute [sic] and the Constitution . . . due to the conduct of the Defendant's corrupt and unlawful and fraudulent conduct."  *See* No. 25-CIV-26134, DE 4 at 2 (S.D. Fla. Jan. 6, 2026).

**B.  The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Title VI Claim in Count Two**

Defendant asserts that the Court does not have subject matter jurisdiction to hear Plaintiff's claim in Count Two under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d *et seq.*, because Title VI does not waive sovereign immunity for the United States (DE 20 at 5).  Defendant argues that absent a clearly evidenced waiver of immunity in the statutory language, the federal government cannot be sued, and the Court lacks subject matter jurisdiction over Plaintiff's Title VI claim (*id.*).  Alternatively, Defendant argues that Plaintiff fails to state a claim for relief under Title VI, because the statute requires that no person be subjected to discrimination based on a protected characteristic under any program or activity receiving federal financial assistance (*id.*).  According to Defendant, the statutory definition of program or activity does not include the federal government; instead, the proper defendant in a Title VI action is the entity that receives federal financial assistance (*id.* at 5-6).  As a result, Defendant maintains that even if the Court has subject matter jurisdiction over Count Two, Plaintiff fails to state a viable claim (*id.* at 6).  Plaintiff counters that there is subject matter jurisdiction under federal question jurisdiction, because "[t]he United States has waived its Sovereign Immunity in this matter" (DE 22 at 9).[8]

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citation omitted).  "Sovereign immunity is jurisdictional in nature. Indeed, the terms of the United States' consent to be sued in any court

---

[8] Even though Plaintiff labels Count Two of the Complaint as "Civil Rights Violation," it contains similar allegations to Counts One and Three, which are tort claims (*compare* DE 1 ¶¶ 26-30 *with* ¶¶ 32-38).  Title VI of the Civil Rights Act "prohibits any recipient of federal financial assistance from discriminating on the basis of race, color, or national origin in any federally funded program." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1202 (11th Cir. 1999).  Given Plaintiff's *pro se* status, construing the Complaint liberally as it must, the Court analyzes Count Two under Title VI. To the extent the allegations in Count Two more closely resemble the tort claims set forth in Counts One and Three, those claims are addressed *supra*.

define that court's jurisdiction to entertain the suit." *Id.* (citation and quotation omitted and cleaned up). "According to the Supreme Court, 'a waiver of sovereign immunity must be unequivocally expressed in statutory text.'" *Davila v. Gladden*, 777 F.3d 1198, 1209 (11th Cir. 2015) (quoting *FAA v. Cooper*, 566 U.S. 284, 290 (2012)).

Courts have routinely found that no such explicit waiver of the federal government's immunity is contained in Title VI. *See, e.g.*, *Dorsey v. U.S. Dep't of Lab.*, 41 F.3d 1551, 1555 (D.C. Cir. 1994) (finding no explicit language in Title VI waiving the government's sovereign immunity); *Keener v. United States*, No. 22-CIV-1640, 2023 WL 2478367, at *8 (D.S.C. Mar. 13, 2023) ("The provisions of Title VI of the Civil Rights Act of 1964 do not waive sovereign immunity or provide grounds for liability against the United States."); *Johnson v. Fed. Emergency Mgmt. Agency*, No. 23-CIV-1818, 2025 WL 465323, at *4 (W.D. La. Feb. 11, 2025) ("[C]ourts have expressly found that the United States did not waive its sovereign immunity for claims under . . . Title VI . . . .") (citation omitted)). Despite Plaintiff's allegation that "[t]he United States has waived Sovereign Immunity in this matter," the United States has not, and Plaintiff provides no authority, nor can the Court locate any, to the contrary. Since Defendant has not waived its immunity with respect to the Title VI claim, the Court lacks subject matter jurisdiction to adjudicate Count Two. *See Tindall v. U.S. Dep't of Lab. Adminstrative Rev. Bd.*, No. 22-11770, 2023 WL 2733480, at *2 (11th Cir. Mar. 31, 2023) ("'Sovereign immunity is jurisdictional,' and absent a waiver of the immunity, the court lacks 'jurisdiction to entertain the suit.'" (citation omitted)). Therefore, it is respectfully recommended that Count Two be **DISMISSED** for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

### C.  The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Tort Claims in Counts One and Three

Turning to Counts One and Three of the Complaint, which allege negligence and negligent retention, respectively, Defendant contends that the Federal Tort Claims Act ("FTCA") only allows a plaintiff to sue the United States for a tort when a private person would be similarly liable under the relevant state law (DE 20 at 7).  Defendant contends that there is not subject matter jurisdiction over Counts One and Three, as Plaintiff "failed to identify a state-tort analogue or failed to establish a claim under a controlling state-tort analogue" (*id.*).  Defendant argues that Plaintiff alleges "a duty 'not to take actions which violate [Plaintiff's] civil rights and engage in conduct which is based upon his race, ethnicity, or religion as a person of Jewish origin'" (*id.*).  But, Plaintiff fails to identify any state tort analogue, which recognizes a similar duty imposed upon private citizens (*id.*); (*see also* DE 1 ¶¶ 26, 32, 40).[9]  Plaintiff counters that the United States has waived its sovereign immunity under Title 28, United States Code, Sections 1346(b) and 2674 (DE 22 at 10).  Plaintiff further argues that Florida Statute Sections 768.28 and 760.01 provide two state analogues that demonstrate a right of action under the FTCA (*id.* at 11-12).

The FTCA waives the sovereign immunity of the United States if injures are "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1) (2013).  Similarly, Section 2674 provides, "The

---

[9] Defendant also argues that Counts One and Three are not tort claims but rather, are repackaged Title VI claims, for which the FTCA does not waive sovereign immunity (DE 20 at 6-7).  While Counts One and Three reiterate largely the same allegations as the Title VI claim in Count Two, construing the Complaint liberally as it must, the Court analyzes these claims as sounding in tort. To the extent Counts One and Three are construed as Title VI claims, they should be dismissed for lack of subject matter jurisdiction for the reasons stated *infra*.

United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674 (1988). "The FTCA was not intended to create new causes of action; nor was it intended as a means to enforce federal statutory duties." *Howell v. United States*, 932 F.2d 915, 917 (11th Cir. 1991) (citation omitted). "[T]he Supreme Court has determined that Congress, in drafting the FTCA, was concerned primarily with providing redress for the garden variety common law torts recognized by state law." *Sellfors v. United States*, 697 F.2d 1362, 1365 (11th Cir. 1983) (citation omitted). So, "[u]nless, according to the law of Florida, the United States could be liable for this alleged tort of its employee if it were a private person, then not only is the sovereign's immunity intact, but the district court is without subject matter jurisdiction and must dismiss the suit." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990) (citation omitted).

"[B]etween § 1346(b)(1) and [§ 2674], there are numerous prerequisites to, and limitations on, the grant of jurisdiction over tort suits against the United States." *Zelaya v. United States*, 781 F.3d 1315, 1323 (11th Cir. 2015). Indeed, "both §§ 1346(b)(1) and 2674 preclude liability of the federal government absent a showing by the plaintiff that a private individual who had acted as did the federal employee, in like circumstances, would be liable for the particular tort under governing state law where the tort occurred." *Id.* In Count One, Plaintiff asserts negligence, arguing the United States owed "a duty of care to Plaintiff for its employee and agent not to take actions which violate[d] his civil rights . . ." (DE 1 ¶ 26). "This duty of care was not to deprive [Plaintiff] of the various protections afforded him under the Constitution and laws of the United States" (*id.* ¶ 27). Plaintiff then seemingly alleges that Defendant's employee "failed to protect Plaintiff from . . . antisemitic conduct while performing her official duties as an employee of the

United States" and "failed to suppress [this antisemitic conduct] . . . allowing the losses incurred by Plaintiff" (*id.* ¶¶ 28-29).

Defendant argues that no such state-tort analogue has been identified by Plaintiff, because the duty Plaintiff alleges arises under federal law.   To the extent Plaintiff is relying on the Bankruptcy Judge's purported violation of his rights under Title VI as the duty that was breached, a violation of federal civil rights is insufficient to establish liability under the FTCA.  *See Sellfors*, 697 F.2d at 1365 ("The FTCA was not intended to redress breaches of federal statutory duties."); *Zelaya*, 781 F.3d at 1324 ("[T]he fact that a federal employee has failed to perform duties imposed by federal law is insufficient by itself to render the federal government liable under the FTCA. Instead, a state tort cause of action is a *sine qua non* of FTCA jurisdiction . . . ." (citation omitted)). Rather, Plaintiff must identify corresponding duties under Florida law that would provide for a negligence claim against a private individual for failure to protect Plaintiff from an alleged violations of his civil rights under like circumstances.

Florida law dictates that the threshold inquiry for a negligence claim is whether the defendant owes a legal duty to the plaintiff.  *Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009). "No common law duty exists, absent a special relationship, for one person to come to the aid of another or to intervene in the misconduct of a third person to prevent the possibility of harm to another." *Laskey v. Martin Cnty. Sheriff's Dep't*, 708 So. 2d 1013, 1014 (Fla. Dist. Ct. App. 1998), *cause dismissed,* 797 So. 2d 1254 (Fla. 2001).  In *Trianon Park Condo. Association, Inc. v. City of Hialeah*, the Florida Supreme Court unequivocally stated, "[T]here is not now, nor has there ever been, any common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of individuals.  In addition, there is no

common law duty to prevent the misconduct of third persons."  468 So. 2d 912, 918 (Fla. 1985).

The Florida Supreme Court explained,

> How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care. This discretionary power to enforce compliance with the law, as well as the authority to protect the public safety, is most notably reflected in the discretionary power given to judges . . . .

*Id.* at 919.  Plaintiff does not allege the existence of any special relationship that would give rise to a legal duty establishing tort liability.  Nor has Plaintiff identified any cases or doctrines under Florida law to which the Court can analogize this case, and the Court cannot locate any cases on its own review.  *See Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 938 (Fla. 2004) (holding "a determination that a governmental actor owed a duty of care with regard to the allegedly negligent conduct is a prerequisite" to determining tort liability).  Where no cognizable state law tort claim could be sustained against a private individual in like circumstances, the Court lacks subject matter jurisdiction over Plaintiff's claim under the FTCA.

In his opposition, Plaintiff contends that Florida Statute Sections 768.28 and 760.01 provide the necessary state analogues to support a waiver of sovereign immunity under the FTCA (DE 22 at 11-12).  But, Plaintiff's reliance on Florida Statutes Sections 768.28 and 760.01 is misplaced.  Section 768.28 states, "In accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act."  FLA. STAT. § 768.28(1) (2014).   In other words, Section 768.28 is the analogous state statute to the FTCA, which waives Florida's sovereign immunity in certain instances.  *See Trianon Park*, 468 So. 2d at 917 (Section 768.28's "sole purpose was to waive that immunity which prevented recovery for breaches of existing common law duties of care.").  Section 768.28 does not establish tort liability or otherwise supply a cause

16

of action that could be brought against a private person under similar circumstances to those here. Similarly, Section 760.01 is Florida's Civil Rights Act, which mirrors a federal Title VI claim, and as discussed above, the United States has not waived its immunity through the FTCA for claims arising under federal or state anti-discrimination laws.  *See Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001) ("[T]he FTCA was not intended as a mechanism for enforcing federal statutory duties. In6stead, the FTCA was designed 'to provide redress for ordinary torts recognized by state law.'" (citation omitted); *Goode v. United States Dep't of Homeland Sec.*, 815 F. App'x 643, 645 (3d Cir. 2020) (finding the FTCA does not waive immunity for claims under state anti-discrimination laws).

Just as with his negligence claim in Count One, Plaintiff's negligent retention claim in Count Three also fails to plead a valid state tort cause of action to support a waiver of sovereign immunity.  "Negligent retention . . . [is] cognizable under Florida law 'when, during the course of employment, the employer becomes aware, or should have become aware, of problems with an employee that indicates his unfitness, and the employer fails to take further action such as investigation, discharge, or reassignment.'"  *Samedi v. Miami-Dade Cnty.*, 134 F. Supp. 2d 1320, 1352 (S.D. Fla. 2001) (citations omitted).  "To state a claim of negligent supervision and retention, [the plaintiff must] plead facts that established the [employer] should have foreseen, based on its employees' work history, that they would commit the current tort."  *Bello v. Johnson*, 442 F. App'x 477, 480 (11th Cir. 2011).  "[T]he underlying wrong allegedly committed by an employee in a . . . negligent retention claim must be based on an injury resulting from a tort which is recognized under common law."  *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999); *Gutman v. Quest Diagnostics Clinical Labs., Inc.*, 707 F. Supp. 2d 1327, 1331 (S.D. Fla. 2010) (same) (citing *Footstar Corp. v. Doe,* 932 So.2d 1272, 1278 (Fla. Dist. Ct. App. 2006)).

17

Once again, Plaintiff alleges that the United States owed "a duty of care to Plaintiff for its employee . . . not to . . . violate his civil rights," which "deprive[d] [Plaintiff] of the various protections afforded him under the Constitution and laws of the United States[,]" and Defendant's employee "failed to protect Plaintiff from . . . antisemitic conduct while performing her official duties as an employee of the United States" (DE 1 ¶¶ 40-42). Plaintiff supplies additional allegations that the United States was or became aware of the problems with the Bankruptcy Judge, indicating "her unfitness [sic] to hold office" and failed to take further action, causing harm to Plaintiff (*id.* ¶¶ 43-45). These allegations point to underlying discriminatory conduct as the basis for Defendant's alleged negligent retention of its employee. Yet, "discrimination [is] not recognized under Florida law as [a] tort[] that can support a claim for negligent . . . retention." *Mighty v. Genesis Eldercare Rehab. Servs., Inc.*, No. 18-CIV-80440, 2018 WL 5113965, at *2 (S.D. Fla. May 24, 2018); *Fernandez v. Bal Harbour Vill.*, 49 F. Supp. 3d 1144, 1153 (S.D. Fla. 2014) (same) (citation omitted); *see also McElrath v. Burley*, 707 So. 2d 836, 839 (Fla. Dist. Ct. App. 1998) (stating claims for discrimination did not exist at common law and protection from discrimination under Florida law is a statutory right legislatively created). Since Plaintiff has failed to plead a state-tort analogue sufficient to trigger a waiver of sovereign immunity under the FTCA, the Court lacks subject matter jurisdiction over Counts One and Three.

The cases that Plaintiff relies on are equally unavailing. In *Limones*, the plaintiffs sued a school district for its failure to apply an automated external defibrillator after a student collapsed while playing soccer. *Limones v. Sch. District of Lee County*, 161 So. 3d 384, 387 (Fla. 2015). The Florida Supreme Court found that the special relationship between a school and its students gave rise to the school's duty to reasonably supervise its students. *Id.* at 390. *Mallory* involved a defendant's employee retrieving a gun and shooting the plaintiff, a tenant at the defendant's

apartment complex. *Mallory v. O'Neil*, 69 So. 2d 313, 315 (Fla. 1954). There, the Court found that the complaint stated a claim for negligence, as the defendant committed the alleged tort outside the scope of his employment. *Id.*; *see also Wilkie v. Alutiiq 3SG, LLC*, No. 11-CIV-20454, 2011 WL 13223675, at *4 (S.D. Fla. Aug. 11, 2011), *report and recommendation adopted sub nom. Wilkie v. Alutiiq, LLC*, No. 11-CIV-20454, 2011 WL 13223676 (S.D. Fla. Aug. 31, 2011) ("Where, as here, a plaintiff alleges and a defendant admits that alleged torts took place during the course and scope of employment, employer liability can only be pursued on the basis of respondeat superior and not on the basis that the employer was negligent." (citing *Mallory*, 69 So. 2d at 315)). Finally, in *Rolland*, the plaintiff claimed that a security firm's employee falsely reported that the plaintiff made a bomb threat. *International Sec. Management Group, Inc. v. Rolland*, 271 So. 3d 33, 38 (Fla. Dist. Ct. App. 2018). The Court discussed Florida law's recognition of a cause of action for an individual who is injured because of a false report of criminal behavior to law enforcement. *Id.* at 48. These cases cited by Plaintiff do not speak to the FTCA or a Florida tort that lies under similar circumstances. Because the FTCA "preclude[s] liability of the federal government absent a showing by the plaintiff that a private individual who had acted as did the federal employee, in like circumstances, would be liable for the particular tort under governing state law where the tort occurred[,]" *Zelaya*, 781 F.3d at 1323, and Plaintiff has failed to plead allegations establishing such a tort under Florida law, it is respectfully recommended that Counts One and Three be **DISMISSED** for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[10]

---

[10] Plaintiff's failure to plead an analogous state-tort cause of action as required by the FTCA might also be construed as a failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See Zelaya*, 781 F.3d at 1325 ("Unless Plaintiffs can identify corresponding state law duties, they have, at the least, failed to state a claim, and arguably their lapse deprives the court of even subject

### D.  Leave to Amend the Complaint would be Futile

Typically, "a *pro se* plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice—at least, that is, where a more carefully drafted complaint might state a claim." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019) (citation modified). But that "extra dose of grace" is not warranted if amendment would be futile. *Id.* at 1133. Moreover, granting a Plaintiff leave to amend is unnecessary if the claim is "patently frivolous." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011). Leave to amend is futile "if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020). We do not ask whether the plaintiff "*has* otherwise stated a claim" but "whether, when all is said and done, he *can* do so." *Silberman*, 927 F.3d at 1133 (emphasis in original). We look to "whether the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief." *Hernandez*, 982 F.3d at 1332 (internal quotation marks omitted).

In this case, because the claims in the Complaint are frivolous for the reasons discussed above, Plaintiff is not entitled to an opportunity to amend the Complaint, notwithstanding his *pro se* status. *See Toussaint*, 2025 WL 2237376, at *6 ("The district court's finding that [the plaintiff's] suit was 'frivolous' is, by definition, a finding that amendment would be futile because

---

matter jurisdiction over the action."). To the extent the deficiencies identified herein do not implicate the Court's subject matter jurisdiction, it is respectfully recommended that those deficiencies warrant dismissal under Rule 12(b)(6).

Defendant alternatively argues that Plaintiff fails to state a claim upon which relief can be granted under Rule 12(b)(6), because Plaintiff fails to allege any facts in the Complaint showing that the United States had any actual or constructive knowledge that the Bankruptcy Judge was unable to perform her job (DE 20 at 10). Defendant also argues that the Court does not have jurisdiction, because Plaintiff failed to allege that he exhausted his administrative remedies (*id.* at 8). Since it is respectfully recommended that the Court lacks subject matter jurisdiction over Plaintiff's claims for the reasons stated above, the undersigned does not reach the merits of these arguments.

his claim was 'without arguable merit either in law or fact,' and that his 'realistic chances of ultimate success are slight.'" (citations omitted)).  Moreover, the claims are completely devoid of legal merit, such that even if Plaintiff incorporated the more detailed allegations from his opposition into the Complaint, Plaintiff still could not show that the alleged discrimination is cognizable as a tort under Florida law to invoke a waiver of immunity under the FTCA.  *See McCree v. Griffin*, No. 19-14646, 2020 WL 2632329 (11th Cir. May 20, 2020) ("[A] district court need not allow even a *pro se* plaintiff leave to amend where amendment would be futile." (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007))); *Alberto v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 467, 469 (11th Cir. 2019) ("A court may nevertheless dismiss a *pro se* complaint with prejudice where any amendment would be futile—that is, where even 'a more carefully drafted complaint could not state a claim.'" (citation omitted)).  The circumstances here counsel against granting Plaintiff leave to amend, because the Complaint would still fail to establish the Court's subject matter jurisdiction, a necessary pre-requisite to any suit.  Any amendment would therefore be futile.

Notably, the procedural posture of this case is different than *Ofer v. Isicoff*, No. 24-11542 (11th Cir. Oct. 21, 2025).  In that case, on appeal, the Eleventh Circuit agreed that Plaintiff was entitled to amend his complaint "as a matter of course," within twenty-one days after the defendant filed a motion to dismiss.  *Id.* at 3.  The defendant filed its motion to dismiss while the case was stayed, and the court "granted the motion [to dismiss] at the same time it lifted the stay."  *Id.*  The Eleventh Circuit noted that "at no time before the case was dismissed was the clock ticking for Ofer to amend his complaint. Ofer was at day one of the twenty-one-day deadline to amend his complaint as a matter of course under rule 15(a)."  *Id.*  By contrast, Defendant filed its Motion to Dismiss on August 28, 2025 (DE 20), giving Plaintiff until September 18, 2025 to file an amended

complaint "as a matter of course." Fed. R. Civ. P. 15(a)(1).  Plaintiff's right to amend has lapsed. At this time, Plaintiff would need leave of court for any amendment, which as discussed is futile.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, it is respectfully recommended that Defendant's Motion to Dismiss (DE 20) be **GRANTED** for lack of subject matter jurisdiction under Rule 12(b)(1).  It is further respectfully recommended that the Complaint be **DISMISSED WITH PREJUDICE** due to the frivolousness of the claims contained therein and that any amendment would be futile.  It is further respectfully recommended that any pending motions be **DENIED AS MOOT** and that this case be **CLOSED**.

## V.    <u>OBJECTIONS</u>

The Parties will have fourteen (14) days from the date of this Report and Recommendation to file written objections, if any, with the Honorable  Kathleen M. Williams, United States District Judge.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except upon grounds of plain error, if necessary, in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on this 26th day of January, 2026.

_____
ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE

cc:    *Pro se* Plaintiff Raziel Ofer
       All Counsel of Record